# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BURKLOW PHARMACY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15CV1591 HEA |
| ) | |
| EXPRESS SCRIPTS, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 2]. On October 27, 2015, the Court held a hearing on this matter, at which both parties were represented by counsel. Arguments were presented at that time. The United States was represented as well, and the Court allowed the Assistant United States Attorney to address the Court. For the reasons set forth below, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is denied.

### Facts and Background[1]

Plaintiff is a retail pharmacy in Pace, Florida. It offers compounding as one of its many services. Compounding is the process by which prescription drugs are created for patients where there may not be a readily available mass-produced

---

[1] Because the Complaint is not verified, the recitation of facts is set out for the purposes of this motion only and in no way relieves the parties of the necessary proof thereof in later proceedings.

alternative. The multiple ingredients in these prescriptions are combined together or "compounded" for the patient.

Defendant is a claims processing company that acts as a pass-through between Insurers, including Tricare, and pharmacies.

Plaintiff and Defendant entered into the *Express Scripts, Inc. Pharmacy Provider Agreement* ("*Agreement*") on November 18, 2013.  The Agreement made Plaintiff a part of Defendant's network of pharmacy providers. As a member of this network, Plaintiff serves as the front-line servicer to customers/patients. Under the plan set up by Defendant, Plaintiff fills doctor ordered prescriptions for its customers who are insured by Tricare. The provider writes a prescription for the patient and the patient then takes that prescription to Plaintiff to fill. Plaintiff is then required to submit the prescription to Defendant for payment approval through an electronic portal. Such software will not accept prescription payment amounts that exceed $1,500.00.  Anything above that amount requires Plaintiff to call an ESI hotline to get approval for the exact prescription cost. If Defendant rejects the amount in total, the prescription is not approved and it is not filled. If Defendant approves the amount or approves a different amount, the ESI representative manipulates the portal so that a resubmission of the prescription is accepted at the ESI approved price. Once accepted, Plaintiff then fills the prescription and dispenses to the patient. Once approved, accepted and filled,

Defendant, in regular payment cycles, pays Plaintiff the ESI approved prices for all submissions.

Defendant maintains the Agreement and a Manual either directly with pharmacies like Plaintiff, or through Pharmacy Services Administrative Organizations ("PSAO"). The Agreement dictates the manner in which disputes are to be resolved. The Agreement provides that Defendant processes submittals for payment.  The Agreement also provides that Defendant may determine whether overpayments have been made and begin a 60 day process by which the overpayment is remedied.

On August 6, 2015, Defendant began sending letters to Plaintiff informing it that undisputed reimbursements that Plaintiff had filed would not be paid. Defendant told Plaintiff that it would be withholding funds and not paying undisputed reimbursements for recently submitted and approved prescriptions in order to recoup past payments for compounding prescriptions. Defendant claims that such past payments for compounding prescriptions are "overpayments." These claims are made despite being over a year old and despite Defendant setting the price, approving the price, and then paying that exact price to Plaintiff. Defendant is notifying Plaintiff that in order to recoup past approved payments – Defendant is "off-setting" payments owed to Plaintiff moving forward. Defendant did not provide any resolution options for Plaintiff.

According to Defendant's letter:

Finally, we are required to annotate your records to enable us to collect the erroneous payment by administrative offset against future TRICARE claims. No such offset action will be taken for 60 days from the date of this letter, however.

Defendant has already begun withholding funds to recover the payments that it made and referenced in the letters attached. The total amount sought is in excess of $20 million.

Plaintiff alleges that Defendant's conduct violates Plaintiff's rights and Defendant's promise to afford it 60 days.

The preliminary injunctive relief sought by the Plaintiff is the same ultimate relief that it seeks in the Complaint.

## Discussion

The Court has jurisdiction to resolve these issues under 28 U.S.C. § 1332 in that Plaintiff is a Florida Corporation with its principal place of business in Milton, Florida.  Defendant is a Delaware corporation with its principal place of business in Missouri.

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability that movant will succeed on the merits, and (4)

the public interest." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The same factors govern a request for a temporary restraining order. *Roberts v. Davis*, 2011 WL 6217937, at *1 (E.D. Mo. Dec. 14, 2011). "No one factor is dispositive of a request for injunction; the Court considers all the factors and decides whether 'on balance, they weigh towards granting the injunction.'" *Braun v. Earls*, 2012 WL 4058073, at *1 (E.D. Mo. Sept. 14, 2012) (quoting *Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994)).

"Although "no single factor is determinative," *Dataphase,* 640 F.2d at 113, the probability-of-success factor is the most significant, *see Home Instead, Inc. v. Florance,* 721 F.3d 494, 497 (8th Cir.2013)." *Sharpe Holdings, Inc. v. U.S. Dept. of Health and Human Services* 2015 WL 5449491, 4 (8th Cir. September 17, 2015)

In seeking a mandatory injunction that disrupts the status quo, the Plaintiffs "must demonstrate not only that the four requirements for a preliminary injunction are met but also that they weigh heavily and compellingly in their favor." *Blankenship v. Chamberlain*, 2008 WL 4862717, at *2 (E.D. Mo. Nov. 7, 2008) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001)).

Plaintiff seeks the same, ultimate relief that it requests in its Complaint. "The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks. It is . . . to keep the parties, while the suit goes on, as far as possible

in the respective positions they occupied when the suit began." *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261-62 (2d Cir. 1996).

Plaintiff seeks a temporary restraining order and a preliminary injunction that orders Express Scripts to stop withholding payment for past filled prescriptions.

***Irreparable Harm***

Plaintiff alleges irreparable harm in that if Defendant continues to withhold payment, it will not be able to remain in business; it will become bankrupt.  Also, Plaintiff argues that its customers will be adversely affected and will not be able to obtain their needed medication.  Plaintiff has not established the existence of irreparable harm in a number of respects.

Initially, Plaintiff has not presented sufficient evidence of damages. Instead, Plaintiff has merely presented evidence that if it does not receive payment, it will go out of business.  At no point has Plaintiff presented any concrete evidence of harm warranting injunctive relief. Where "[t]he possible harm identified is wholly speculative . . . it cannot be called irreparable harm." *Local Union No. 884 v. Bridgestone/Firestone*, *Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995).

More significantly, Plaintiff's alleged harm is not irreparable, as there are other causes of action under which money damages are a potential form of relief. *Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, 2014 WL 4988199,

at *7 (E.D. Mo. Oct. 7, 2014) ("[T]he harm is purely economic and therefore not irreparable.").

In the irreparable harm analysis, only harm to the plaintiffs is considered. Plaintiff's customers are not parties before the Court, so any harm to them is not considered within this factor. Regardless, there is no evidence before the Court that any customer has suffered harm. None of Plaintiff's customers have provided the Court with an affidavit attesting to their inability to obtain their prescriptions from another pharmacy.

*Likelihood of Success*

The Court also finds that the Pharmacies are unlikely to succeed on the merits of their claims, which weighs against the award of injunctive relief.

Pursuant to the Agreement, Plaintiff acknowledged that:

a. "[A]ll claims submitted on behalf of TRICARE beneficiaries will be paid from appropriated funds furnished by Congress through the annual appropriations act" for DoD.

b. DoD funds "are disbursed through [Express Scripts] at the direction of the DoD" and remitted on a bi-weekly cycle.

c. Express Scripts may be required by DoD to institute recoupment against Burklow Pharmacy with respect to TRICARE beneficiaries, and such a recoupment action could entail "collection by offset against current or subsequent claims…."

d. For TRICARE claims involving indications of fraud, filing of false claims, or misrepresentation, payment by Express Scripts is to be "suspended
pending referral to the appropriate law enforcement agencies" or until

payment is authorized by DHA.

Defendant has informed the Court that it stopped sending payment to Plaintiff because on July 13, 2015, the Defense Health Agency (DHA) directed it to (a) recoup all compound pharmacy claims from Plaintiff dating back to January 1, 2014 and (b) suspend all compound pharmacy claims submitted by Plaintiff effective July 13, 2015, in connection with a pending government investigation. On October 21, 2015, Defendant received notification that DHA was rescinding its July 13, 2015 recoupment order, but directing Defendant to suspend payment for present and future TRICARE claims submitted by Plaintiff going forward.  This notification came in the form of correspondence from the Office of the Assistant Secretary of Defense, Health Affairs, Director, Program Integrity John Marchlowska to Plaintiff.

The October 21, 2015 correspondence from DHA to Plaintiff informed it, *inter alia*, that:

> a. [T]he Defense Health Agency (DHA) will suspend payment for present and future claims for services provided by [Burklow Pharmacy].
>
> b. [DHA's] action is due to [Burklow Pharmacy] having dispensed compound drugs to TRICARE beneficiaries based upon prescriptions written by physicians who may not have established a physician-patient relationship with the TRICARE beneficiary.
>
> c. [DHA's] action is being taken under the provisions of Section 199.9 of Title 32 of the Code of Federal Regulations because filling invalid prescriptions, regardless of your knowledge of whether they are invalid … would constitute 'abuse' as that term is defined in 32 C.F.R. 199.9(b).

It appears from this correspondence that Defendant was acting within the Agreement and in accordance with the directive from DHA.  Moreover, Plaintiff was aware that this action was a possibility under the terms of the Agreement Therefore, the Court concludes that Plaintiff, without more of a showing is unlikely to succeed on its action for declaratory and injunctive relief

*Public Interest*

The public interest favors compliance with compliance with the DHA's directive, particularly in considering the serious nature of the investigation into fraudulent claims and abuse.

*Balance of Harms*

Because Plaintiff seeks the ultimate relief it demanded in the Complaint, Express Scripts will be harmed by the loss of its right to trial.   Additionally, Defendant will suffer adverse consequences from DHA if it fails to comply with the directive.

Plaintiff, on the other hand has an administrative remedy to pursue which may expedite the resolution of Plaintiff's claims. [2]

## Conclusion

---

[2]  Defendant argues that Plaintiff should be required to exhaust its administrative remedy prior to Court's consideration of the Motion for TRO and Preliminary Injunction.  It is noted that the administrative procedure is not mandatory, rather, it *can* be pursued.  Furthermore, whether or not Plaintiff has attempted to exhaust his administrative remedy, the Court is of the opinion that the issue is not ripe, nor an appropriate, sole reason for denying the TRO under *Dataphase*.

The Court has considered the entire record and the arguments presented at the hearing on this matter. Based upon the foregoing consideration of all of the *Dataphase* factors, Plaintiff's demand for mandatory and ultimate relief and failure to establish irreparable harm, Plaintiff is not entitled to a temporary restraining order or a preliminary injunction.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order, [Doc. No. 2], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for a Preliminary Injunction, [Doc. No. 2], is **DENIED**.

Dated this  30th  day of October, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE